**HIGHLINE VILLAGE ASSOCIATES, a California limited partnership, and Greensview Associates, a California limited partnership, Plaintiffs–Appellants,**

v.

**HERSH COMPANIES, INC., a Florida corporation, f/k/a Hersh National Painting Co., Defendant–Appellee.**

No. 98CA1886.

Colorado Court of Appeals, Div. II.

Oct. 28, 1999.

As Modified on Denial of Rehearing Dec. 23, 1999.

Certiorari Granted April 17, 2000.

Silver & DeBoskey, P.C., Joe L. Silver, Martin D. Beier, Denver, Colorado, for Plaintiffs–Appellants.

Faegre & Benson, LLP, J. David Arkell, Jessica F. Toll, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge CRISWELL.

Plaintiffs, Highline Village Associates and Greensview Associates, appeal from the summary judgment dismissing their claims for breach of contract and breach of express warranty, arising from two substantially identical contracts with defendant, Hersh Companies Inc., to repaint the exteriors of two large apartment complexes owned by plaintiffs. The judgment of dismissal was based upon the trial court's conclusion that the contractors' statute of limitations, § 13–80–104, C.R.S.1999, barred the assertion of those claims. Because we conclude that there exists a genuine issue of material fact as to whether that statute was tolled, we reverse and remand for further proceedings.

The contracts at issue, which were entered into in March 1992, contained an express warranty that defendant:

> shall guarantee that all work executed shall be free from defects of material and workmanship for a period of five (5) year(s) from date of acceptance and shall further guarantee that [it] will, at [its] own expense, repair and replace all defective work ... which becomes defective during the term of the guarantee.

The painting was completed in August 1992. However, in November of that year, paint on some of the exterior doors began to peel. Upon plaintiffs' request, defendant repainted a portion of those doors, although it claimed that the peeling was not its fault.

Thereafter, commencing in June 1994 and continuing through November 1994, plaintiffs advised defendant of a number of other areas where the paint had begun to peel. By the latter date, defendant had repainted all of the items on a "punch list" which plaintiffs had previously prepared. Before this work was done, however, plaintiffs had provided written notice under defendant's guarantee that such work was required and had also warned defendant that, if such work was not done, plaintiffs would retain the services of a local painting contractor to perform the repainting and would then file suit to recover damages.

There is no evidence in the record that defendant made any express representations to plaintiffs that the areas it repainted would not peel again. Among the information submitted to the court with respect to the summary judgment, however, was some evidence

that the areas repainted were satisfactory and needed no further repainting.

After the November 1994 repainting was accomplished, additional areas began to peel, so that, by March 1995, it was estimated that between 10% and 40% of the paint applied to the trim of both buildings had failed. Based upon the testing of the painted surfaces performed in August 1996, plaintiff ultimately concluded that the peeling of the trim areas was the result of defendant's alleged use of a paint different in quality from that specified in the contracts. In contrast, defendant asserted that the cause of the failure was to be found in the nature of the old paint that had existed on the trim when defendant's work commenced.

Sometime in the spring of 1995, defendant refused to repaint any of the other surfaces where the paint was failing. Plaintiffs then filed their complaint in October 1996, asserting, *inter alia*, the claims for breach of contract and breach of express warranty that are at issue here. The date of this filing was more than four years after defendant had initially completed its work under each contract, but was less than two years after defendant had last repainted a portion of the trim.

In determining that § 13–80–104 barred plaintiffs' claims, the district court concluded that the initial peeling of paint from a portion of the exterior doors of the two complexes in November 1992 was a "physical manifestation of a defect in the improvement" under § 13–80–104(1)(b), C.R.S.1999, so that, for purposes of this statute of limitations, plaintiffs' claims for relief arose at that time. In reliance upon *Dean Witter Reynolds, Inc. v. Hartman,* 911 P.2d 1094 (Colo.1996), the court also concluded that it could not engage in an equitable tolling of this statute because, under Colorado law, application of such doctrine was dependent upon the commission of a "wrongful act" and defendant's actions in repainting a portion of the peeled surfaces could not be classified as such.

## I.

Plaintiffs first assert that the statute of limitations properly applicable to their claims is § 13–80–102, C.R.S.1999, which is the general statute of limitations for contract actions, rather than § 13–80–104, which is a statute of only limited application. We disagree.

The pertinent portion of § 13–80–104 (the "contractors' statute") provides that:

(1)(a) [A]ll actions against any ... contractor ... performing ... supervision, inspection, [or] *construction ... of any improvement to real property* shall be brought within the time provided in section 13–80–102 [i.e., within two years after the cause of action accrues] ....

(b) A claim for relief arises under this section at the time the claimant ... discovers or in the exercise of reasonable diligence should have discovered the *physical manifestations of a defect* in the improvement which ultimately causes the injury.

(c) Such actions shall include any and all actions in ... contract ... for the recovery of damages for:

(I) Any deficiency in the ... construction ... of *any improvement to real property* .... (emphasis supplied)

■ It is to be noted that the *period* of limitations under either § 13–80–102, which plaintiffs assert is applicable, or the contractors' statute is the same—two years after the cause of action or claim for relief accrues or arises. However, under the contractors' statute, a claim accrues when a physical manifestation of a defect appears, even though its cause is not known at that time. Unlike its predecessor, *see* Colo. Sess. Laws 1979, ch. 144, § 13–80–126 at 631–632, the present contractors' statute provides that a claim arises for purposes of its limitation period when the defect becomes manifest, even though the cause of that defect is not then known. *See Criswell v. M.J. Brock & Sons, Inc.,* 681 P.2d 495 (Colo.1984)

In contrast, a claim for damages to property generally does not accrue until "both the injury and its cause are known or should have been known by the exercise of reasonable diligence." Section 13–80–108(1), C.R.S. 1999.

Here, if it is assumed that the peeling of paint from the exterior doors in November

1992 was the manifestation of the *same* defect that caused the later peeling of the paint upon the trim—an issue not yet addressed, either by the parties or the trial court—the period of limitations would have started in November 1992 if the contractors' statute applies. However, because plaintiffs did not discover the alleged cause of any defect until August 1996, the period of limitations under § 13–80–102 would not have started until the latter date.

## A.

Plaintiffs first assert that defendant's actions in repainting the two buildings did not involve the "construction of any improvement." They do not assert that painting is not a part of "construction" under this statute. Rather, they argue that *re* painting an existing structure is not an "improvement"; it is, they say, only a repair or maintenance function that does not result in any "improvement to real property" within the meaning of the contractors' statute. We reject this assertion.

■ There is no statutory definition of "improvement to real property." Hence, the phrase must be given its ordinary meaning. *Enright v. City of Colorado Springs,* 716 P.2d 148 (Colo.App.1985). However, because the statute was designed to protect those parties engaged in the construction industry, the focus in interpreting its provisions should be more upon the activities of the contractor than upon the resulting product. *Stanske v. Wazee Electric Co.* 722 P.2d 402 (Colo.1986).

■ Nevertheless, if the result of the construction is a product that is "essential and integral to the function of the construction project," that product is an improvement within the meaning of the statute. *Two Denver Highlands Limited Partnership v. Dillingham Construction, N.A., Inc.,* 932 P.2d 827, 829 (Colo.App.1996).

■ Thus, activities such as the grading of a lot in preparation for construction, *Embree v. American Continental Corp.,* 684 P.2d 951 (Colo.App.1984), and the attachment of personal property to realty, whether or not such attachment results in the creation of a fixture, *Anderson v. M.W. Kellogg Co.,* 766 P.2d

637 (Colo.1988); *Stanske v. Wazee Electric Co., supra,* are improvements under the contractors' statute.

■ On the other hand, activities not associated with the physical alteration of property do not constitute the construction of an improvement. *See Gleason v. Becker-Johnson Associates, Inc.,* 916 P.2d 662 (Colo.App. 1996) ("pre-buy" inspection of home by agent of buyer); *Flatiron Paving Co. v. Great Southwest Fire Insurance Co.,* 812 P.2d 668 (Colo.App.1990) (moving historical monument from one location to another); *Calvaresi v. National Development Co.,* 772 P.2d 640 (Colo.App.1988) (obtaining re-zoning and platting of property).

■ Even if we were to assume that some routine repairs to real property, although resulting in some physical alteration to that property, would not constitute an improvement to that property within the meaning of the contractors' statute, the activity engaged in by defendant here consisted of more than routine repair. On the contrary, defendant was required to prepare the surface to receive the new paint by removing the old paint and by sanding and caulking that surface; it then repainted the entire exterior of two large apartment complexes. If, then, we are to focus upon defendant's activities, we must conclude that the nature of its activities here did not differ substantially from the services it would have performed had the two complexes been newly constructed. In the latter event, even plaintiffs would agree that defendant's activities would have involved the construction of an improvement.

We conclude, therefore, that defendant's activities here were of a nature to which the contractors' statute applies.

In reaching this conclusion, we have considered the opinion in *Sharp Bros. Contracting Co. v. Westvaco Corp.,* 817 P.2d 547 (Colo.App.1991), but have determined that it is irrelevant to the question presented here. There, an explosion occurred during the replacement of a lining within a concrete structure. The opinion concludes that, even though the resulting injuries might not have been caused by any "defect"

in the improvement, the statute also applies to any "deficiency" in the construction process and upheld the statute's applicability to the circumstances on that basis. That opinion did not, therefore, expressly consider whether the nature of the work involved was the "construction of an improvement."

### B.

■ Plaintiffs also argue that the contractors' statute does not apply to their breach of express warranty claims, which, they assert, did not arise or accrue until defendant refused to perform repair work in the spring of 1995. Again, we disagree.

A similar argument was reviewed in, but rejected by, *Mohawk Green Apartments v. Kramer*, 709 P.2d 955 (Colo.App.1985). Given the language of the express warranty here, that opinion is persuasive.

In reaching this conclusion, we do not decide whether the parties to a construction contract may agree to extend the limitations period of the contractors' statute. Even if such an extension would be proper, the language of the express warranty here does not evidence any intent to extend that period.

Likewise, we do not address the issue, impliedly presented by plaintiff's argument, whether an express warranty for a period longer than the contractors' statute's six-year period of repose can have the effect of extending that period. That issue would be presented only if the alleged defect manifested itself more than six years after substantial completion of the improvement, but within the warranty period. However, the undisputed facts here do not implicate the repose provisions of the statute.

### II.

We do agree with plaintiffs that the trial court erred in concluding that Colorado law would prevent, even under appropriate circumstances, the tolling of the limitations period from the time that defendant commenced its repainting efforts until it abandoned those efforts.

■ A substantial number of courts have concluded that, under a statute of limitations that starts to run when a defect is discovered in either an item of personal property or in a new structure, the running of that period may be equitably tolled during the time that the seller or contractor engages in repair efforts under an express or implied representation that those efforts will remedy the defect.

While there is an analytical difference between the tolling of a statute of limitations and equity's imposition of an estoppel upon a defendant to prevent the assertion of the statute as a defense, *see Shell Western E & P, Inc. v. Dolores County*, 948 P.2d 1002 (Colo.1997), courts approving this repair doctrine have invoked an estoppel based upon a promise. *See The Seller Fiddles and the Clock Ticks: Seller's Cure and the UCC Statute of Limitations*, 60 Notre Dame L.Rev. 318, 332–343 (1985).

Courts recognizing this repair doctrine have applied it in those instances in which it is demonstrated that:

[A] vendor claims that defects in non-complying goods can be corrected and attempts to do so. This follows because such conduct may lead the injured party to reasonably believe that it will receive satisfaction without resort to litigation.

(citations omitted).

*City of Bedford v. James Leffel & Co.*, 558 F.2d 216, 218 (4th Cir.1977) (applying Virginia law). *See also Little Rock School District v. Celotex Corp.*, 264 Ark. 757, 574 S.W.2d 669 (1978) (construction contract); *Mid City Finance Co. v. Coleman*, 232 So.2d 918 (La.App.1970) (action under Uniform Commercial Code (U.C.C.)); *Keller v. Volkswagen of America, Inc.*, 733 A.2d 642 (Pa.Super.1999) (U.C.C. case); *Amodeo v. Ryan Homes, Inc.*, 407 Pa.Super. 448, 595 A.2d 1232 (1991) (construction contract).

On at least two occasions, the federal district court, applying Colorado law, has invoked this repair doctrine to toll the limitations period established by a Colorado statute of limitations. *See Richard O'Brien Companies v. Challenge–Cook Bros., Inc.*, 672 F.Supp. 466 (D.Colo.1987); *Colorado–Ute Electric Association, Inc. v. Envirotech Corp.*, 524 F.Supp. 1152, 1156 (D.Colo.1981)

("The law will not allow one to lull an opponent to sleep on its rights and then raise the passage of time as a defense.")

■ This repair doctrine requires proof of a promise that the repairs will cure the defect and that plaintiff reasonably relied upon that promise. Thus, the required proof is similar to, but not the same as, that needed for application of the doctrine of promissory estoppel under Restatement (Second) of Contracts § 90 (1981). Such a promise need not be express; it may be one that is reasonably implied from all of the circumstances. *City of Bedford v. James Leffel & Co., supra; Little Rock School District v. Celotex Corp., supra.*

■ Such an approach makes good sense and is consistent with public policy. So long as the maker of the product or the contractor is undertaking repairs to remedy the defect (irrespective of any disclaimers of liability for that defect) and those repairs appear to accomplish their purpose, requiring the vendee or owner to institute suit against the maker or the contractor while those repairs are being made would be inconsistent with the policy that favors voluntary settlement of disputes. Indeed, a rejection of the doctrine might well lead to wholly unnecessary litigation.

In spite of the obvious appeal of the repair doctrine, the trial court concluded that the supreme court's opinion in *Dean Witter Reynolds, Inc. v. Hartman, supra,* prevents the application of this doctrine in Colorado. We conclude, however, that *Dean Witter* does not have this effect.

In *Dean Witter,* the plaintiff and another party had deposited funds with defendant with instructions that no funds could be withdrawn without written authorization from both. In alleged violation of these instructions, Dean Witter released the funds to the other party, who forged the plaintiff's name and received the funds. In the ensuing litigation between that party and the plaintiff, the trial court initially ruled that the plaintiff had no interest in the funds, but this ruling was reversed on appeal, and on remand, a judgment was entered in the plaintiff's favor. The plaintiff then sued Dean Witter for breach of contract, and in response to its defense based upon the statute of limitations, asserted that the limitations period was tolled until entry of the final judgment in the previous litigation.

The supreme court disagreed. It noted that the Colorado courts have applied the doctrine of equitable tolling only in those instances in which a defendant's wrongful conduct had impeded a plaintiff's ability to pursue a claim in a timely manner. *See, e.g., Garrett v. Arrowhead Improvement Ass'n,* 826 P.2d 850 (Colo.1992) (statute tolled where employer failed to supply employee with report needed to file worker's compensation claim). In *Dean Witter,* however, the defendant had done nothing to impede or to prevent the plaintiff from filing suit.

Further, although courts in other jurisdictions have tolled a statute where extraordinary circumstances have prevented the filing of a claim, such as where the plaintiff had been interned as a prisoner of war in a foreign country, *see Osbourne v. United States,* 164 F.2d 767 (2d Cir.1947), no such circumstances were presented in *Dean Witter.*

The court's ultimate conclusion, therefore, was that: "Fairness does not require equitable tolling in this case." *Dean Witter, supra,* 911 P.2d at 1099.

*Dean Witter* was later distinguished in *Shell Western E & P, Inc. v. Dolores County, supra,* which held that a taxpayer's failure to provide a report to the county tax assessor resulted in the equitable tolling of the statute of limitations in an action to collect taxes. In reaching this conclusion, the court noted that equity may employ either of two doctrines to stay the running of a statute of limitations—equitable estoppel or equitable tolling—and that they are analytically different. It rejected the application of equitable estoppel because the evidence did not establish all of the necessary elements of that doctrine, but it approved an equitable tolling of the statute.

For several reasons, we do not view the court's conclusion in *Dean Witter* as precluding the stay or tolling of a statute of limitations based upon the repair doctrine.

First, in *Dean Witter*, the defendant had done *nothing* to impede, to prevent, or even to *discourage* the plaintiff from instituting a timely legal action. Indeed, the plaintiff did not assert that Dean Witter was the cause of any delay; he pinned the responsibility for his delay upon the erroneous legal conclusion of a trial court in litigation in which Dean Witter was not even a party.

Second, while the *Dean Witter* court commented upon the doctrine of equitable tolling, it made no mention of the doctrine of equitable estoppel that the court in *Shell Western* recognized as a viable alternate basis for staying the application of a statute of limitations under appropriate circumstances.

Finally, neither *Dean Witter* nor *Shell Western* referred to the repair doctrine that has received wide recognition from other courts. This doctrine, while based upon estoppel principles, does not rely so much upon equitable estoppel as it does upon promissory estoppel. And, this promissory estoppel doctrine, or one similar to it, has previously been relied upon by divisions of this court to stay the running of a statute of limitations. *See Samples–Ehrlich v. Simon*, 876 P.2d 108 (Colo.App.1994) (tolling of statute because of reliance upon promise is appropriate in some circumstances, but here statute required promise to be in writing); *Mountainwood Condominium Homeowners Ass'n v. Cal–Colorado*, 765 P.2d 1066 (Colo.App.1988) (party who reasonably relies upon promise or representation of another may assert equitable estoppel to stay running of statute); *Kniffin v. Colorado Western Development Co.*, 622 P.2d 586 (Colo.App.1980) (where defendant promised to perform obligations within reasonable time, statute did not run until efforts were abandoned); *Lee v. Denver*, 29 Colo.App. 256, 482 P.2d 389 (1971) (where defendant led plaintiff to believe that compensation would be paid, defendant cannot rely upon statute of limitations).

No mention was made of these decisions in either *Dean Witter* or *Shell Western;* those two opinions discussed only equitable estoppel and equitable tolling and are, therefore, of limited application to a case involving the repair doctrine, which invokes considerations akin to promissory estoppel. And, given the court's lack of reference to any of these previous decisions, we cannot interpret either of those opinions as disapproving the principle previously applied in the earlier decisions.

We conclude, therefore, that, if plaintiffs here can establish that, after there was a manifestation of a defect under the statute, defendant undertook to repair that defect; that, in doing so, defendant either expressly or impliedly promised or represented that such repairs would remedy such defect; and that plaintiffs reasonably relied upon such promise or representation and, as a result, did not institute legal action against defendant, the limitations period of the contractors' statute will be tolled until the date that defendant abandoned its repair efforts.

Resolution of these ultimate questions will necessarily depend upon the determination of numerous factual issues that cannot be resolved upon the present record. Indeed, that record suggests that many of these material issues may be the subject of genuine dispute. Hence, a remand to the trial court is necessary.

The judgment is reversed, and the cause is remanded to the district 'court for further proceedings consistent with the views set forth in this opinion.

Judge MARQUEZ and Judge RULAND concur.