**CURRAGH QUEENSLAND MINING LIMITED, a Delaware corporation, Plaintiff–Appellee and Cross–Appellant,**

v.

**DRESSER INDUSTRIES, INC., a Delaware corporation; and Global Industrial Technologies, Inc., a Delaware corporation, Defendants–Appellants and Cross–Appellees,**

and

**TMPSC, Inc., a Delaware corporation, Plaintiff–Counterdefendant–Appellant and Cross–Appellee,**

v.

**Curragh Queensland Mining Limited, a Delaware corporation, Defendant–Counterclaimant–Appellee and Cross–Appellant.**

**No. 00CA1049.**

Colorado Court of Appeals, Div. III.

April 25, 2002.

As Modified on Denial of Rehearing June 13, 2002.

Certiorari Dismissed Oct. 4, 2002.

Greenberg Traurig, LLP, David G. Palmer, Brian L. Duffy, Naomi G. Beer, Denver, Colorado, for Plaintiff–Appellee and Cross–Appellant/Defendant–Counterclaimant–Appellee and Cross–Appellant.

Hall & Evans, LLC, Alan Epstein, Thomas L. Beam, Denver, Colorado (on the briefs); Kennedy & Christopher PC, John R. Mann, Denver, Colorado; Godwin Gruber, PC, Donald E. Godwin, David J. White, David L. Patterson, Dallas, Texas, for Defendant–Appellant and Cross–Appellee Dresser Industries, Inc.

Hall & Evans, LLC, Alan Epstein, Thomas L. Beam, Denver, Colorado; Spain & Hastings, H. Daniel Spain, Houston, Texas, for Defendant–Appellant and Cross–Appellee Global Industrial Technologies, Inc., and Plaintiff–Counterdefendant–Appellant and Cross–Appellee TMPSC, Inc.

Opinion by Judge DAILEY.

Dresser Industries, Inc.; Global Industrial Technologies, Inc.; and TMPSC, Inc. (collectively, Sellers), appeal from a judgment entered in favor of Curragh Queensland Mining Limited (Buyer) on various contract and warranty claims. Buyer cross-appeals the judgment entered in favor of Sellers on one of its claims. We affirm in part, reverse in part, and remand for further proceedings.

In 1990, Sellers sold Buyer a Planetary Swing Drive Dragline, a large machine used in the reclamation of coal. The Dragline, however, had significant mechanical defects, which Sellers attempted to fix over the course of the next seven years.

After Sellers twice unsuccessfully attempted a "final fix," Buyer filed suit in October 1998 against Dresser and Global, alleging, as pertinent here, breach of contract, breach of express and implied warranties, and a Colorado Consumer Protection Act (CCPA) violation. TMPSC filed suit against Buyer, alleging breach of contract, and Buyer counterclaimed, alleging, as pertinent here, the same claims it alleged against Dresser and Global.

The trial court granted summary judgment against Sellers on their statute of limitations defense and against Buyer on its CCPA claim. Following a three-week trial, the jury found for TMPSC in the amount of $348,000 on its breach of contract claim against Buyer, and for Buyer in the amount of $14,280,000 on its breach of contract and warranties claims against Sellers. Buyer's damages encompassed $2,278,000 in past repair costs and $12,002,000 to correct all of the Dragline's defects ("true fix").

### I. Parties Proceeding with the Appeal

Prior to oral argument, Global and TMPSC informed this court that they had recently filed petitions in bankruptcy and that all portions of this appeal affecting their interests were automatically stayed under § 362 of the Bankruptcy Code. See 11 U.S.C. § 362(a)(1); *Farley v. Henson*, 2 F.3d 273, 275 (8th Cir.1993). *But see In re Lyngholm*, 24 F.3d 89, 92 (10th Cir.1994)(adopting minority position that appellate proceedings ini-

tiated by debtor-defendants are not automatically stayed).

Consequently, only those parts of the appeal and cross-appeal concerning Buyer and Dresser (Seller) proceed here.

## II.  Summary Judgments

Seller and Buyer each contend that the trial court erred in its summary judgment rulings barring Seller's statute of limitations defense and Buyer's CCPA claim.  We find no basis to reverse either of those rulings.

"The purpose of summary judgment is to permit the parties to pierce the formal allegations of the pleadings and save the time and expense connected with trial when, as a matter of law, based on undisputed facts, one party could not prevail." *Peterson v. Halsted*, 829 P.2d 373, 375 (Colo.1992).  Because summary judgment is a drastic remedy, it is appropriate only where there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1340 (Colo.1988).

With these standards in mind, we examine the contentions of the parties.

## A.  Statute of Limitations

Seller contends that the trial court erred in barring its statute of limitations defense. We disagree.

■  Because the contract at issue concerned a sale of goods, the Uniform Commercial Code (UCC) is applicable.  The UCC provides, "An action for breach of any contract for sale must be commenced within the time period prescribed in section 13–80–101, C.R.S.  This period of limitation may not be varied by agreement of the parties."  Section 4–2–725(1), C.R.S.2001.  Section 13–80–101(1)(a), C.R.S.2001, provides that a UCC action must be commenced within three years of the date the underlying claim accrues.

In the trial court, Seller argued that, because Buyer's cause of action accrued at the latest in 1991 when Buyer became aware of the Dragline's defects, Buyer's October 1998 lawsuit was untimely.  The trial court ruled

otherwise, however, relying upon the repair doctrine recognized by a division of this court in *Highline Village Associates v. Hersh Cos.*, 996 P.2d 250, 257 (Colo.App.1999)(*Highline I*).

In *Highline I*, the division held that under the repair doctrine, the limitations period on breach of contract and breach of warranty claims is tolled from the time a seller undertakes efforts to repair the defective goods until the time it abandons those efforts where: (1) the seller either expressly or impliedly promises or represents that such repairs will remedy such defect;  and (2) the buyer reasonably relies upon such promise or representation and, as a result, does not institute legal action against the seller.

On certiorari review, the supreme court held that the repair doctrine was inapplicable to the breach of contract claim and unnecessary to salvage the breach of warranty claims because the contract contained a five-year repair or replace defect warranty, which was not breached until a year before the lawsuit was filed.  *See Hersh Cos. v. Highline Village Associates*, 30 P.3d 221, 226 (Colo.2001)(*Highline II*).  Significantly, the supreme court did not reject the repair doctrine;  it simply said the doctrine was either inapplicable or unnecessary under the facts of that case.

Consistent with the supreme court's ruling in *Highline II*, we examine the provisions of the contract in this case to determine their impact upon a statute of limitations analysis and consider the applicability of the repair doctrine only if one or more of Buyer's claims would be untimely when measured against the provisions of the contract.

■  In the present case, Seller provided a repair or replace warranty, but different from that in *Highline II*.  Here, the repair or replace warranty addressed only defects that arose within twelve months from the delivery of the Dragline.  Based on our review of the record, this warranty would have expired in 1992, and claims based thereon would have been barred under the three-year limitations period by 1995.

However, Seller also guaranteed Buyer that the Dragline would achieve eighty-seven

percent availability for successive three-month intervals until March 1997. This guarantee effectively delayed commencement of the limitations period for seeking a "true fix" remedy of the Dragline until that time. *Cf. In re Church*, 833 P.2d 813, 814 (Colo. App.1992)("if a money obligation is payable in installments, a separate cause of action arises on each installment and the statute of limitations begins to run against each installment when it becomes due"). Consequently, Buyer's October 1998 claim for a "true fix" was timely filed.

The same rationale and result do not apply to Buyer's claim for past repair damages, which accrued at the various times when it expended funds to repair the Dragline. Consequently, Buyer could not recover repair expenditures made prior to October 1995 unless the three-year limitations period was tolled by the repair doctrine.

We reject Seller's contention that the repair doctrine cannot apply to claims for past repair damages. Requiring a buyer to institute suit for past repairs while a seller is still attempting to make repairs would be inconsistent with the policy underlying the repair doctrine, which favors the voluntary settlement of disputes without unnecessary litigation. *See Highline I, supra*, 996 P.2d at 256. *See also Highline II, supra*, 30 P.3d at 225 (disapproving approach that "would promote unnecessary litigation, in turn compromising business relationships and burdening courts with unripe claims").

The record discloses uncontradicted evidence that, from the time the Dragline was delivered until Sellers implemented an unsuccessful "final fix" some seven years later, Sellers attempted various repairs or made various promises that they would stand behind their product until it was fixed. From this evidence, no reasonable factfinder could find that, under the repair doctrine, Buyer's action was untimely.

At oral argument on appeal, Seller attempted, for the first time, to separate itself from Global and TMPSC for purposes of applying the repair doctrine. Seller argued that, because any post–1992 repairs and promises had been made exclusively by those

entities, only they (and not it) should be burdened with the effects of the repair doctrine. However, because Seller elected, with Global and TMPSC, to litigate these issues jointly both here and in the trial court, we will not, at this late date, consider this new argument. *See Timm v. Reitz*, 39 P.3d 1252, 1255 (Colo.App.2001) ("arguments ... not presented to the trial court in connection with a motion for summary judgment will not be considered on appeal"); *Board of County Commissioners v. City of Greenwood Village*, 30 P.3d 846, 849 (Colo.App.2001)(court will not consider arguments raised for the first time in reply brief or during oral argument).

Based on the foregoing, we conclude that the trial court properly rejected Seller's statute of limitations defense.

### B. CCPA Violation

We also conclude that the trial court did not err in granting summary judgment against Buyer on its CCPA claim.

A private remedy is available under the CCPA if a plaintiff shows:

> (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

*Hall v. Walter*, 969 P.2d 224, 235 (Colo.1998).

Here, the trial court granted summary judgment because it determined that as a matter of law Buyer could not establish the third element of this test, namely, that Seller's allegedly unfair or deceptive trade practice "significantly impacts the public as actual or potential consumers" of Seller's goods or services.

The purpose of the CCPA is to provide "consumers who are in a position of relative bargaining weakness with protection against a range of deceptive trade practices."

*Martinez v. Lewis*, 969 P.2d 213, 222 (Colo. 1998).

In this case, it was undisputed that: (1) although Seller advertised its Dragline to about 3000 mining companies, only a very few could muster the financial resources necessary to purchase a $38 million Dragline; (2) Buyer was neither economically vulnerable nor unsophisticated in matters pertaining to mining equipment; (3) Buyer, represented by counsel, negotiated at length with Seller the terms of the purchase agreement and several subsequent modifications; and (4) Buyer negotiated a number of custom-made features for the Dragline.

These circumstances persuade us that the trial court correctly determined, as a matter of law, that the parties' transaction would not significantly affect the public as actual or potential consumers. *See Martinez v. Lewis, supra* (no CCPA significant public impact from doctor's misrepresentation to insurance company, which held a position of relative bargaining strength because of its sophistication, experience, and resources).

Thus, the trial court properly granted Seller's motion for summary judgment on Buyer's CCPA claim.

### III. Buyer's Recovery of Future Lost Profits

Relying on a provision in the contract barring Buyer from recovering consequential damages, including lost profits, Seller contends that the trial court erred in allowing Buyer to recover future lost profits. We disagree.

■ Initially, we reject Buyer's assertion that the damages awarded to it included only past repairs and the diminution in the Dragline's value. Only one expert testified to the various ways in which damages could be calculated. He testified that the diminution in value was $10,755,000. However, as evidenced by the verdict form, the jury rejected this method of calculating damages.

Instead, the jury awarded Buyers "true fix" damages in the amount of $12,002,000. The same expert provided three separate "true fix" damages figures, which averaged a little over $12,002,000. Each of the three

figures included $3,395,000 in future lost profits, and there was no mathematical way to arrive at a $12,002,000 "true fix" verdict without including future lost profits.

Seller argues that inasmuch as the parties' contract barred Buyer from recovering lost profits, the trial court erred in not barring Buyer's recovery of such damages. Seller also argues that, in any event, the jury necessarily rejected the only conceivable legal basis upon which Buyer could recover lost profits. We are not persuaded.

### A. Contractual Bar

■ Although parties to a contract may limit or alter the measure of damages recoverable for breach of contract, *see* § 4-2-719(1)(a), C.R.S.2001, "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in [the UCC]." Section 4-2-719(2), C.R.S.2001. *See Cooley v. Big Horn Harvestore Systems, Inc.*, 813 P.2d 736, 748 (Colo.1991).

■ A limited remedy fails of its essential purpose if it deprives a party of the substantial benefit of the bargain. When a seller cannot cure defects by repeated repair attempts, a remedy limited to repair fails of its essential purpose. *See Rose v. Colorado Factory Homes*, 10 P.3d 680, 684 (Colo.App. 2000). *See also Leprino v. Intermountain Brick Co.*, 759 P.2d 835, 837 (Colo.App.1988)(action or inaction of the seller can cause a limited remedy to fail of its essential purpose).

■ Here, in determining whether the court should have resolved the issue as a matter of law, we consider the evidence in the light most favorable to Buyer and must deny Seller relief if evidence exists from which a reasonable fact finder could find in Buyer's favor. *See Bob Blake Builders, Inc. v. Gramling*, 18 P.3d 859, 865-66 (Colo.App.2001)(directed verdict standard).

■ When considered in the light most favorable to Buyer, the evidence revealed that, despite numerous attempts over the course of seven years, Sellers were unsuccessful and then abandoned their attempts to

cure the defects in the Dragline, which failed to operate at the guaranteed eighty-seven percent capacity. This evidence was sufficient for a reasonable fact finder to conclude that the contract's limited repair or replace remedy had failed of its essential purpose. Thus, the issue of whether lost profits should be awarded to Buyer, despite a waiver of such damages in the contract, was left for the jury to resolve.

### B. Jury Instructions and Verdict Form

■ Alternatively, Seller asserts that, inasmuch as the jury necessarily rejected application of the essential purpose doctrine when it failed to award Buyer damages for past lost profits, no legal basis existed for awarding Buyer future lost profits as part of "true fix" damages. Again, we are not persuaded.

The record sheds no light on the reason why the jury rejected an award of past lost profits. It may have rejected such an award because it adjudged the disputed evidence of past lost profits insufficient. See Margenau v. Bowlin, 12 P.3d 1214, 1219 (Colo.App. 2000)(in awarding damages, it "is for the jury to determine the weight of, and to resolve conflicts and inconsistencies in, the evidence").

The jury may also have rejected an award of past lost profits, while allowing future lost profits, because it only partially rejected the essential purpose doctrine or because it misunderstood the doctrine's application to the lost profits part of "true fix" damages. This could have occurred because neither the instructions nor the verdict form: (1) explicitly linked the essential purpose doctrine to future lost profits as opposed to past lost profits; (2) indicated that rejection of the essential purpose doctrine as to past profits required rejection for all purposes, including future profits; or (3) indicated that the jury should segregate various components of "true fix" damages.

Under these circumstances, we refuse to speculate upon a basis for invalidating the jury's award of damages, particularly because Seller neither objected to any deficiencies in the instructions or verdict form, nor tendered instructions of its own with respect to these matters. Consequently, Seller may not now claim that the jury's "true fix" damage award improperly included future lost profits. See Decker v. Browning–Ferris Industries, 931 P.2d 436, 448 n. 12 (Colo.1997)(party's failure to raise specific objection to special verdict form, which allowed jury to award noneconomic damages for contractual claims, waived issue for purposes of appeal); Bear Valley Church of Christ v. DeBose, 928 P.2d 1315, 1328–30 (Colo.1996)(party's failure to object to or tender instructions or verdict forms waived claim that instructions and verdict forms allowed inconsistent or duplicative jury awards).

### IV. Prejudgment Interest

Finally, Seller contends that the trial court erred in awarding Buyer prejudgment interest with respect to "true fix" damages. We agree.

■ Under § 5–12–102, C.R.S.2001, judgment creditors may receive prejudgment interest calculated from the date money is wrongfully withheld or becomes due to the date of payment or the date judgment is entered, whichever first occurs.

■ Section 5–12–102 is liberally construed to permit recovery of prejudgment interest. Mesa Sand & Gravel Co. v. Landfill, Inc., 776 P.2d 362, 365 (Colo.1989); Vento v. Colorado National Bank–Pueblo, 907 P.2d 642, 647 (Colo.App.1995). However, prejudgment interest is allowed only on past, not future, losses. James v. Coors Brewing Co., 73 F.Supp.2d 1250, 1257 (D.Colo.1999).

■ Here, because the jury's award of "true fix" damages was based upon Buyer's anticipated, rather than past, expenditures, it could not be a basis for awarding prejudgment interest. Subtracting the $12,002,000 "true fix" damage figure, we conclude that prejudgment interest may be awarded on only $2,278,000 of Buyer's judgment.

Accordingly, that portion of the judgment awarding Buyer prejudgment interest is reversed, and the case is remanded for an award of prejudgment interest in accordance with the views expressed in this opinion.

The judgment is affirmed in all other respects.

Judge NEY and Judge ROY concur.