**Judith A. SMITH and James R. Smith, Petitioners/Cross–Respondents**

v.

**EXECUTIVE CUSTOM HOMES, INC., Respondent/Cross–Petitioner.**

No. 09SC223.

Supreme Court of Colorado, En Banc.

May 10, 2010.

Hanes & Schutz, LLC, Timothy J. Schutz, Richard W. Hanes, Colorado Springs, Colorado, Attorneys for Petitioners/Cross–Respondents.

Vaughan & DeMuro, Gordon L. Vaughan, Jessica Kyle Muzzio, Colorado Springs, Colorado, Attorneys for Respondent/Cross–Petitioner.

Justice MARTINEZ delivered the Opinion of the Court.

## I. Introduction

Judith A. Smith and her husband James R. Smith, plaintiff-appellants below, petitioned for review of the court of appeals' judgment in *Smith v. Executive Custom Homes, Inc.*, 209 P.3d 1175 (Colo.App.2009). The Smiths sought review of the court of appeals' holding that their claims for personal injuries under

the Construction Defect Action Reform Act ("CDARA") began to accrue, for purposes of the CDARA's two-year statute of limitations, on the date the Smiths discovered the construction defect that later allegedly caused Judith Smith's injury. Executive Custom Homes, Inc. ("ECH"), defendant-appellee below, also petitioned for review of the court of appeals' holding in *Smith*. ECH approves of the court's first holding regarding accrual of the Smiths' personal injury claims; however, ECH seeks review of the court of appeals' additional holding that genuine issues of material fact existed as to whether the equitable "repair doctrine" tolled the statute of limitations, which resulted in reversal of the trial court's grant of summary judgment in ECH's favor.

We agree with the court of appeals that under section 13–80–104, C.R.S. (2009) ("section 104"), a claim for personal injury arises not at the time of injury, but "at the time the claimant . . . discovers or in the exercise of reasonable diligence should have discovered the physical manifestations of a defect in the improvement which ultimately causes the injury." *Id.* § 104(b)(I). However, we disagree with the court of appeals' holding that the equitable repair doctrine may have tolled the statute of limitations on the Smiths' claims. Because we conclude that equitable tolling under the repair doctrine is inconsistent with the CDARA, we reverse the judgment of the court of appeals and remand the case to that court with directions to affirm the judgment of the trial court.

## II. Facts and Procedural History

The Smiths live in a newly-constructed "patio home" built by ECH, which is located in a retirement community managed by a homeowners association. The homeowners association employs a professional property management company, Z & R Property Management ("Z & R"), to maintain the community properties. The property manager furnished by Z & R apparently serves as a liaison between homeowners and ECH to handle complaints related to the construction of the residences.

On February 6, 2004, James Smith sent an e-mail to the property manager stating that he had noticed a sheet of ice accumulating on his sidewalk near the entrance to his home, which he felt was the result of a construction defect. The property manager then forwarded the e-mail to ECH asking ECH to look into the problem. ECH later responded by e-mail to the property manager that it had inspected the Smiths' home and agreed that some repairs to the gutters were needed; however, ECH indicated that repairs could not be completed until the snow melted. ECH then arranged for the contractors who originally installed the gutters to make the necessary repairs, which took place between February and June of 2004. Neither the property manager nor ECH ever contacted the Smiths regarding the repairs, and the Smiths had no personal knowledge that the repairs took place.

On February 2, 2005, Judith Smith sustained injuries after she slipped on ice that accumulated on the front walkway of the Smiths' home. The Smiths then contacted ECH directly by letter to notify it of the accident. In response, ECH informed the Smiths of the repairs to the gutters and denied liability for Judith Smith's injuries. On January 17, 2007, nearly two years after the accident, the Smiths filed a complaint against ECH alleging damages for personal injuries caused by a construction defect.[1] ECH responded by filing a motion for summary judgment, asserting that the undisputed facts established that the Smiths' claims, which were filed almost three years after the Smiths first noticed the ice accumulation, were time-barred by the CDARA's two-year statute of limitations located in section 104. The trial court agreed, granted ECH's motion for summary judgment, and dismissed the case.

The Smiths appealed to the court of appeals, which held that, although it agreed with the trial court that the Smiths' claims

1. Plaintiffs seeking damages for injuries caused by a construction defect are statutorily required to comply with a notice of claim procedure before filing suit. *See* § 13–20–803.5, C.R.S. (2009). However, neither party briefed this issue, and the record is silent regarding whether the Smiths complied with such a procedure.

for personal injury began to accrue on the date James Smith notified the property manager of the ice accumulation, genuine disputes as to material facts existed regarding whether the statute of limitations was equitably tolled by operation of the "repair doctrine" while ECH performed its repairs. *See Smith*, 209 P.3d at 1181. As a result, the court of appeals reversed the trial court order granting ECH's motion for summary judgment. The Smiths and ECH both petitioned for certiorari.[2]

## III. Analysis

### A. Accrual of Personal Injury Claims Under the CDARA

■ The Smiths acknowledge that their personal injury claims, which allegedly resulted from the defective construction of their home, are governed by the applicable statute of limitations set forth in section 104. Section 104 states that actions under the CDARA shall be brought within two years after the claim for relief arises. *See* § 13–80–104(1)(a) (cross referencing § 13–80–102, C.R.S. (2009)). The question we must answer is whether such a "claim for relief arises" when the injury occurs, as the Smiths contend, or at the time the homeowner first observes the defect that allegedly causes the injury, as ECH argues and as the trial court and court of appeals concluded.

■ Statutory interpretation involves only questions of law, which we review de novo. *Spahmer v. Gullette*, 113 P.3d 158, 162 (Colo.2005). When interpreting a statute, we strive to give effect to the legislative purposes by adopting an interpretation that best effectuates those purposes. *Id.* In order to ascertain the legislative intent, we look first to the plain language of the statute, *id.*, giving the language its commonly accepted and understood meaning, *Prop. Tax Adm'r v. Prod. Geophysical Servs.*, Inc., 860 P.2d 514, 517 (Colo.1993). Where the statutory language is clear and unambiguous, we do not resort to legislative history or further rules of statutory construction. *See Spahmer*, 113 P.3d at 162; *Prop. Tax Adm'r*, 860 P.2d at 517.

■ We agree with the trial court and court of appeals that the plain meaning of section 104 is clear. The statute contains both a list of specific claims to which the statute applies and the corresponding accrual standard for such claims. The list of claims explicitly includes "actions for the recovery of damages for ... injury to or wrongful death of a person caused by any such deficiency." § 13–80–104(c)(I)–(III). Regarding the accrual of such claims, the statute clearly states that "a claim for relief arises under this section at the time the claimant or the claimant's predecessor in interest discovers or in the exercise of reasonable diligence should have discovered the physical manifestations of a defect in the improvement which ultimately causes the injury." § 13–80–104(b)(I). Thus, it is plain from the language of the statute that claims under the CDARA, personal injury claims included, begin to accrue when the homeowner first discovers or should have discovered the defect.[3]

■ The Smiths dispute this plain meaning interpretation by arguing that the statute's lengthy legislative history renders the statutory language ambiguous.[4] According

**2.** We granted certiorari on the following two issues:

I. Whether the court of appeals erred as a matter of law in holding that the petitioners' claim for relief for personal injuries under section 13–80–104 of the Colorado Revised Statutes accrued approximately one year before the subject personal injuries were suffered.

II. Whether the court of appeals erred in reversing the trial court's grant of summary judgment for the respondent/cross-petitioner by finding that the repair doctrine equitably tolled the statute of limitations under section 13–80–104 of the Colorado Revised Statutes.

**3.** That is not to say that the statute of limitations under the CDARA will never begin to run at the

time of injury. It is possible that an injury itself could serve as initial discovery of a construction defect. However, as in this case, where the homeowner notices the obvious physical manifestations of what appears to be a construction defect, that homeowner cannot later argue that the resulting injury, particularly one as foreseeable as slipping on ice after the discovery of ice accumulation, served as the first notice of the defect for purposes of commencing the statute of limitations.

**4.** Originally enacted in 1969, section 104 was initially located at section 87–1–28, C.R.S. (1969), then moved to section 13–80–127 (1973). *See* ch. 89, sec. 1, § 135–6–13, 1970 Colo. Sess.

to the Smiths, such ambiguity must be resolved by interpreting the statute so that the special statutory accrual standard in section 104 applies to all claims under the CDARA except claims for personal injury. In place of section 104, the Smiths argue that personal injury claims should be governed by the general claim accrual standard in section 13–80–108, C.R.S. (2009), which provides that claims for personal injury, among others, begin to accrue when both the injury and its cause are known. The legislative history, however, cannot render the plain and unambiguous language of section 104 ambiguous. When the meaning of a statute is clear based on a plain reading of the language, we do not consult legislative history. *See Scoggins v. Unigard Ins. Co.,* 869 P.2d 202, 205 (Colo. 1994) ("Even if the intent of the General Assembly can be disputed, if the plain language of the statute is clear, it is controlling."); *Hyland Hills Park & Recreation Dist. v. Denver & Rio Grande W. R.R. Co.,* 864 P.2d 569, 574 (Colo.1993) ("[D]espite the ambiguous statements that comprise most of the legislative history, the plain meaning of the statute is dispositive."). Thus, even though we may not agree with the propriety or wisdom of a policy that limits claims for personal injuries in the manner set out in section 104, we must refrain from going beyond the plain meaning of the statute to "accomplish something the plain language does not suggest." *Scoggins,* 869 P.2d at 205.[5]

 The Smiths also argue that such a literal interpretation produces an absurd and unfair result by encouraging homeowners to file unripe lawsuits because they will be forced to file suit before the injury happens or before the extent of the injury is known, a result that directly conflicts with the CDARA's purpose of streamlining construction litigation. *See CLPF–Parkridge One, L.P. v. Harwell Invs., Inc.,* 105 P.3d 658, 664 (Colo.2005) (discussing the purpose of the CDARA). We agree with the Smiths that this court should avoid an interpretation that produces an illogical or absurd result. *See id.* at 661. However, it is not the case that a literal, plain meaning interpretation of section 104 would encourage unripe lawsuits under the CDARA. A homeowner may file a claim under the CDARA as soon as the defect is noticed; the homeowner does not have to wait until such a defect causes collateral injury to a person or property. *See* § 13–80–104(c)(I); *see also Homestake Enters., Inc. v. Oliver,* 817 P.2d 979, 982–83 (Colo.1991) (noting that the 1979 amendments were the legislature's response to a prior supreme court case, *Duncan v. Schuster–Graham Homes,* 194 Colo. 441, 578 P.2d 637 (1978), which held that section 104 did not apply to claims for the defective improvement itself). As such, incentivizing homeowners to resolve construction defect issues at the time the defect is first noticed rather than waiting until the defect later causes an injury directly serves the purpose of streamlining litigation that underlies the CDARA.

 We recognize that a literal interpretation of section 104 has the potential for unfair results in the context of personal injury claims, particularly when a serious injury occurs after notice of a minor or insignificant construction defect. A plain reading of sec-

---

Laws 364, 367. Before 1979, the statute contained the same two-year statute of limitations but provided no standard for when such a claim accrued. In 1979, however, the General Assembly amended the statute to include the accrual standard at issue in this case. *See* ch. 144, sec. 1, § 13–80–127, 1979 Colo. Sess. Laws 631, 631–32. It also added the specific list of claims to which the statute applied, including personal injury claims. *See id.* The statute was then repealed and reenacted in 1986, at which time it was slightly amended and recodified as section 13–80–104. *See* ch. 114, sec. 1, § 13–80–104, 1986 Colo. Sess. Laws 695, 697. The statute ultimately enacted in its current form in 2001 as part of Colorado's Construction Defect Action Reform Act. *See* ch. 132, sec. 2, § 13–80–104, 2001 Colo. Sess. Laws 388, 390.

**5.** Even though the legislative history of section 104 is not pertinent to our understanding of the statute, which is grounded in the plain reading of the statutory language, we have reviewed that history. During the course of the committee hearings and hearings on the floor of the Senate, legislators expressed an understanding that all claims for relief, including claims for personal injury, will begin to accrue at the time the homeowner first discovers, or should have discovered, the defect that ultimately causes the injury. Thus, we find the legislative history to be consistent with the plain meaning of the statute.

tion 104 clearly indicates that a homeowner's claims under the CDARA may accrue and be forever barred by the statute of limitations before a personal injury occurs. And although this outcome may be equitable when viewed in terms of property damage, it certainly is quite harsh when viewed in the context of a serious and perhaps unforeseeable personal injury. Nevertheless, a harsh or unfair result will not render a literal interpretation absurd. The rule that we will deviate from the plain language of a statute to avoid an absurd result must be reserved for those instances where a literal interpretation of a statute would produce a result contrary to the expressed intent of the legislature. *See, e.g., Frazier v. People,* 90 P.3d 807, 812 (Colo.2004) (holding that where the legislature intended to increase the relevant penalties, an interpretation resulting in a decrease of such penalties would produce a result opposite to the purpose of the bill and therefore must be avoided as absurd); *see also Dep't of Transp. v. City of Idaho Springs,* 192 P.3d 490, 494 (Colo.App.2008) ("We ... disregard unambiguous statutory language only when the resultant absurdity is 'so gross as to shock the general moral or common sense.'") (quoting *Crooks v. Harrelson,* 282 U.S. 55, 60, 51 S.Ct. 49, 75 L.Ed. 156 (1930)). However, the rule does not permit this court to give a statute a meaning that the plain language does not support in order to avoid a result that we find inequitable or unwise. Where a statute leads to undesirable results, it is up to the General Assembly, not the courts, to determine the remedy. *See Dep't of Transp.,* 192 P.3d at 494. Therefore, even though it may be unfair that a personal injury claim under the CDARA might accrue

and be barred forever before the injury occurs, such a result does not render the statutory interpretation absurd.[6]

## B. Equitable Repair Doctrine

▮ Although the court of appeals concluded that the Smiths' claims began to accrue upon discovery of the defect, the court reversed the trial court's order granting ECH's motion for summary judgment because it held that genuine disputes as to material facts existed regarding application of an equitable principle known as the "repair doctrine." *See Smith,* 209 P.3d at 1181. The repair doctrine tolls a limitations period while a construction professional undertakes repair efforts intended to remedy the defect. *See Highline,* 996 P.2d at 257 (setting forth elements of repair doctrine). Tolling continues until the date that the construction professional abandons its repair efforts, provided that the homeowner reasonably relied on the promises to repair and, as a result, did not institute a legal action against the construction professional. *See id.*

▮ The repair doctrine has not been formally adopted by this court, but it has been considered and applied in several Colorado cases. *See Colo.–Ute Elec. Ass'n v. Envirotech Corp.,* 524 F.Supp. 1152 (D.Colo. 1981) (adopting repair doctrine and applying it to Colorado case); *Highline,* 996 P.2d at 255–57 (adopting and applying repair doctrine in Colorado); *Curragh Queensland Min. Ltd. v. Dresser Indus., Inc.,* 55 P.3d 235, 239–40 (Colo.App.2002) (applying repair doctrine). However, the repair doctrine is a form of equitable tolling, and "equitable toll-

6. The Smiths have not claimed that the gutter repair performed by ECH constitutes "construction of an improvement to real property," thereby commencing a new limitations period from the date the defective repair was first noticed or should have been noticed. *See* § 13–80–104(1)(a) (stating that the CDARA applies to all claims arising from the "construction of any improvement to real property"). Moreover, neither the court of appeals nor the trial court addressed this issue sua sponte and we do not address it here. We note, however, that the court of appeals has defined the phrase "construction of an improvement to real property" to mean "where the result of the construction is a product that is 'essential and integral to the

function of the construction project.'" *Highline Village Assocs. v. Hersh Cos.,* 996 P.2d 250, 254 (Colo.App.1999) (quoting *Two Denver Highlands Ltd. P'ship v. Dillingham Constr., N.A., Inc.,* 932 P.2d 827, 829 (Colo.App.1996)), *aff'd in part and rev'd in part on other grounds,* 30 P.3d 221 (Colo. 2001). In *Highline,* the court of appeals held that the repainting of an existing structure constituted construction of an improvement to real property, such that a defect resulting from the repainting would fall within the purview of the CDARA. *Id.* However, the court of appeals in *Highline* did not address whether subsequent inadequate repairs to remedy a defect arising from the initial repainting constituted "construction of an improvement to real property."

ing is not permissible where it is inconsistent with the text of the relevant statute." *United States v. Beggerly*, 524 U.S. 38, 48, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998) (holding that equitable tolling is inconsistent with the text of a statute because the statute already accounted for equitable tolling); *see also United States v. Brockamp*, 519 U.S. 347, 350–54, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997) (holding that the statutory language clearly foreclosed the possibility of equitable tolling); *Laird v. Blacker*, 2 Cal.4th 606, 7 Cal.Rptr.2d 550, 828 P.2d 691, 698 (1992) (holding that the legislature expressly intended to disallow tolling under any circumstances not enumerated in the statute). We conclude that equitable tolling pursuant to the repair doctrine is inconsistent with the CDARA because the CDARA already provides an adequate legal remedy in the form of statutory tolling of the limitations periods under specific and defined circumstances, including during the time in which repairs are being conducted.

In 2003, the General Assembly amended the CDARA to add a detailed notice of claim procedure that goes beyond requiring notice of a potential claim; it also encourages resolution of potential defect claims before suit is filed and provides for tolling of the limitations periods while repairs are conducted. *See* ch. 188, sec. 5, § 13–20–803.5, 2003 Colo. Sess. Laws 1361, 1363–64. Under section 13–20–803.5, C.R.S. (2009) ("section 803.5"), a homeowner begins the procedure by serving the construction professional with a written notice of claim. *See* § 13–20–803.5(1). The notice of claim must reasonably describe the alleged defect, its type and location, and the alleged injuries or damages caused by the defect. *See* § 13–20–802.5(5), C.R.S. (2009). In response, the construction professional may inspect the property. *See* § 13–20–803.5(2). Following completion of the inspection process, the construction professional has thirty days (or forty-five days for commercial property) to either submit an offer to resolve the claim by paying a sum certain or by agreeing to remedy the defect described in the notice of claim. *See* § 13–20–803.5(3).

If the construction professional does not make such an offer, the homeowner rejects the offer, or the construction professional does not comply with its offer to remedy or settle the claim after the offer is accepted, the homeowner may then bring an action against the construction professional. *See* § 13–20–803.5(6)–(7).

■ Importantly, the statutes of limitations and repose located in section 104 are tolled for the duration of the notice of claim procedure and for sixty days following its completion so that a homeowner's ability to bring a claim under the CDARA will not be prejudiced by compliance with the statute. *See* § 13–20–805, C.R.S. (2009). Hence, if the construction professional elects to make repairs pursuant to section 803.5, both limitations periods would be tolled while repairs are being conducted and for an additional two months.[7] Thus, the statute already contemplates allowing extra time for repair efforts, and application of the equitable repair doctrine to toll claims under the CDARA would therefore be redundant. Moreover, the repair doctrine could frustrate the operation of the statutory notice of claim procedure laid out in detail in section 803.5 because the repair doctrine could result in tolling for repairs outside of the limited circumstances and specific durations set forth by the General Assembly in the statute. Finally, we do not resort to equity where there is a "plain, speedy, adequate remedy at law," *Szaloczi v. John R. Behrmann Revocable Trust*, 90 P.3d 835, 842 (Colo.2004), which the notice of claim procedure provides. Thus, because the General Assembly has already taken into account the need for extra time to complete repairs by allowing for statutory tolling while such repairs are made pursuant to the notice of claim procedure, we hold that equitable tolling under the repair doctrine would be inconsistent with the CDARA and consequently cannot be applied in this case.

Because this case arose well after enactment of the statutory notice of claim proce-

---

7. Repairs made pursuant to section 803.5 must be completed in accordance with a predetermined timetable submitted by the construction professional along with the offer to repair. *See* § 13–20–803.5(5). If the construction professional is not able to do so, the homeowner may bring their claim without further notice. § 13–20–803.5(7).

dure, tolling pursuant to the statute was available to the Smiths. Therefore, although we disagree with the court of appeals remanding the case based on possible equitable tolling pursuant to the repair doctrine, we next consider whether to remand this case in order to determine if the statute of limitations was tolled pursuant to the statute. We note that the briefs and the record before us are silent as to whether statutory tolling was addressed below. Nevertheless, even were we to construe the tolling periods under the notice of claim provisions generously in the Smiths' favor, it appears that their claims would nonetheless be barred by the two-year statute of limitations, and remand is therefore unnecessary.

The record indicates that the Smiths' claims began to accrue on February 6, 2004, the date that James Smith first noticed the ice accumulation and notified the property manager by email, who in turn notified ECH. If we were to construe that email as commencing the notice of claim procedure, the Smiths' claims would be tolled until June 8, 2004, the date the repairs were apparently completed, plus an additional sixty days. If we were to also construe the Smiths' letter dated June 20, 2006 to ECH notifying it of Judith Smith's injuries as commencing a second, independent tolling period pursuant to the notice of claims procedure, the second tolling period would constitute only slightly more than two months. Thus, the total maximum statutory tolling to which the Smiths could possibly have been entitled amounted to a little more than eight months. Because the Smiths filed their claims nearly three years after discovering the construction defect, their claims would still be barred by the CDARA's two-year statute of limitations by slightly more than three months. Therefore, we conclude that remand is unnecessary.

## IV. Conclusion

We agree with the court of appeals' holding that a claim for personal injury under the CDARA begins to accrue when the homeowner first notices, or in the exercise of reasonable diligence should have noticed, the physical manifestations of the construction defect that ultimately causes the injury. However, because the court of appeals improperly reversed the trial court's grant of summary judgment in order to consider application of the equitable repair doctrine, we reverse the court of appeals' judgment and remand this case to that court with directions to affirm the trial court's grant of summary judgment in favor of ECH.

Chief Justice MULLARKEY dissents and Justice HOBBS joins in the dissent.

Chief Justice MULLARKEY, dissenting.

Because Executive Custom Homes' attempted repair in the spring of 2004 constituted an improvement to real property as defined by section 13–80–104(1)(a), C.R.S. (2009), the statute of limitations did not begin to run until the Smiths were aware of the defect in that repair. They became aware of the defective repair only when Judith Smith was injured on February 2, 2005. Their complaint, filed on January 17, 2007, was within the two-year statute of limitations. Also, the tolling provisions of section 13–20–803.5, C.R.S. (2009) were not intended, and should not be interpreted, as a replacement to the repair doctrine. Therefore I respectfully dissent and would allow the Smiths' claim to proceed.

Section 13–80–104, C.R.S. (2009) does not explicitly say that a repair is included within the type of construction activity it covers. However, the court of appeals has held that it is, and I would follow and apply that holding in this case. *See Highline Vill. Assocs. v. Hersh Cos.*, 996 P.2d 250 (Colo.App. 1999), *aff'd in part, rev'd in part sub nom. Hersh Cos. v. Highline Vill. Assocs.*, 30 P.3d 221 (Colo.2001).[8] In that case, an inadequate paint job on the exterior of two large apartment complexes led to an attempted repair, which also proved faulty. The court ruled that the attempted repair was "essential and integral to the function of the construction

---

8. We affirmed *Highline Village Associates* in part and reversed in part, but in doing so we explicitly stated that we were not commenting upon the court of appeals' holding as it pertained to the

question of whether a repair was covered by section 13–80–104. *Hersh Cos.*, 30 P.3d at 225 n. 4.

project," and therefore constituted the type of construction work intended to be covered by section 13–80–104. *Id.* at 254 (citations omitted). A merely routine repair would not qualify, but in *Highline,* as here, the work done was essential to the proper functioning of the property. There is no dispute in this case that when the installation of the gutters was performed at the time of the original construction it was work of the kind defined by section 13–80–104.

The faulty repair of the gutters is a construction defect in itself, so the two-year statute of limitations associated with construction defects cannot, as the majority's interpretation would have it, begin to run prior to the faulty repair. Therefore the statute of limitations only begins to run when the defect in that repair is, or should have been, discovered.

Section 13–20–803.5 should not be seen as a statutory replacement for the repair doctrine. It is a notice requirement that must be satisfied before suit can be filed. Just as the Governmental Immunity Act limits the amount of expensive litigation the state must endure (see sections 24–10–101 to 24–10–120, C.R.S. (2009)), 13–20–803.5 is an attempt to limit construction professionals' exposure to liability by giving them an opportunity to fix problems before they are required to defend against a lawsuit. Indeed, the brief headline description attached to the bill that enacted section 13–20–803.5 stated that the act was "[c]oncerning limitations on claims for damages filed against construction professionals." Ch. 188, § 13–20–803.5, 2003 Colo. Sess. Laws 1361. Section 13–20–803.5 protects construction professionals from becoming potential defendants in lawsuits. The statutory provision is a notice requirement and nothing more. It should not be construed as an endorsement or rejection of the repair doctrine.

For these two reasons I respectfully dissent.

I am authorized to say that Justice HOBBS joins in this dissent.