**Jamie SNELL, Plaintiff–Appellant,**

v.

**PROGRESSIVE PREFERRED INSURANCE COMPANY, Defendant–Appellee.**

No. 09CA0923.

Colorado Court of Appeals, Div. I.

July 22, 2010.

Paul Gordon LLC, Paul Gordon, Denver, Colorado, for Plaintiff–Appellant.

Retherford, Mullen & Moore, LLC, J. Stephan Mullen, Kelly M. Telfeyan, Colorado Springs, Colorado, for Defendant–Appellee.

Opinion by Judge RICHMAN.

Plaintiff, Jamie Snell, appeals the district court's grant of summary judgment in favor of defendant, Progressive Preferred Insurance Company (insurer). We affirm.

## I. Background

The parties do not dispute the following facts. In April 2006, plaintiff purchased automobile insurance from insurer. Insurer renewed the policy on or about October 27, 2007 for a six-month period to run through April 27, 2008. Although the parties have not provided us with a copy of the policy, it is undisputed that the policy included uninsured/underinsured motorist (UM/UIM) coverage with limits of $25,000 for each person and $50,000 for each accident.

When insurer issued the policy, and when insurer renewed it in October 2007, Colorado statutes defined an underinsured vehicle as one which

is insured or bonded for bodily injury or death at the time of the accident, but the limits of liability for bodily injury or death under such insurance or bonds are:

(a) Less than the limits for uninsured motorist coverage under the insured's policy; or

(b) Reduced by payments to persons other than an insured in the accident to less than the limits of uninsured motorist coverage under the insured's policy.

Ch. 413, sec. 1, § 10–4–609(4), 1983 Colo. Sess. Laws 454; *cf.* § 10–4–609(4), C.R.S. 2009 (effective Jan. 1, 2008).

In addition, at that time, Colorado statutes provided that the maximum liability of the insurer under UM/UIM coverage shall be the lesser of

(a) The difference between the limit of uninsured motorist coverage and the amount paid to the insured by or for any person or organization who may be held legally liable for the bodily injury; or

(b) The amount of damages sustained, but not recovered.

Ch. 413, sec. 1, § 10–4–609(5), 1983 Colo. Sess. Laws 454 (repealed effective Jan. 1, 2008).

However, in Senate Bill 07–256, the legislature amended section 10–4–609, effective January 1, 2008. Ch. 413, sec. 2, 2007 Colo. Sess. Laws 1922 (deleting former section 10–4–609(4)(a) and (b)). As amended, section 10–4–609(1)(c), C.R.S.2009, provides in relevant part, "The amount of the coverage available pursuant to this section shall not be reduced by a setoff from any other coverage, including . . . other uninsured or underinsured motor vehicle insurance." The bill also removed language from section 10–4–609(2) which had permitted insurers to include policy language prohibiting "stacking" of UM/UIM limits in policies issued to an insured and resident relatives of the insured. *See* Ch. 413, sec. 4, § 10–4–609(2), 1992 Colo. Sess. Laws 1759.[1] Section 4 of the bill provides that it "shall take effect January 1, 2008, and shall apply to policies issued or renewed on or after the applicable effective date of this act."

The policy renewed for the period from October 27, 2007 through April 27, 2008 initially insured a 1987 Chevrolet 510 pickup

---

1. Based on this amendment, the parties and the district court characterize the legislative change in Senate Bill 07–256 as a "stacking amendment."

truck. On January 14, 2008, plaintiff added liability coverage for a 1995 Suzuki Sidekick to the policy. This resulted in a premium increase of $83 for the policy period. Plaintiff made no changes to the coverage limits or to the UM/UIM coverage on the policy.

On February 8, 2008, plaintiff was in the Suzuki when she was involved in an accident with another vehicle. The driver of the other vehicle had a policy liability limit of $50,000. With insurer's permission, plaintiff accepted the limits of the other driver's liability insurance. Because she sustained damages in excess of that amount, she also filed a claim for UIM benefits with insurer. Essentially, plaintiff asserted that the $25,000 limit of her own UM/UIM coverage should be added to the limits of the other driver's policy, resulting in coverage of up to $75,000. Insurer denied the claim, stating that the other driver was not underinsured and that plaintiff was not entitled to any additional recovery under her UM/UIM insurance.

Plaintiff filed a complaint asserting claims for breach of contract, bad faith breach of insurance contract, and improper denial of claims. She alleged that, since the amendments to the statute changed the definition of an underinsured vehicle, deleted maximum UM/UIM coverage, and became effective January 1, 2008, the former definition of an underinsured vehicle and coverage limits could not be applied to her policy.

Plaintiff moved for summary judgment based on the statutory changes, and insurer cross-moved for summary judgment, arguing that the statutory revisions do not apply to plaintiff's claims and asserting that adding the Suzuki to the policy did not constitute the issuance or renewal of a policy within the meaning of the amendments to the statute, and hence the amended statute was not applicable.

The district court granted insurer's motion, concluding: "The addition of the 1995 Suzuki Sidekick to Plaintiff's policy of insurance on January 14, 2008 resulted in neither the issuance of [a] new contract of insurance nor the renewal of Plaintiff's existing policy. Therefore the 'stacking' amendment to C.R.S. Section 10–4–609 does not apply." This appeal followed.

On July 2, 2009, this court issued an order to show cause why the appeal should not be dismissed for lack of a final, appealable order. After receiving a response from plaintiff, a motions division of this court deferred ruling on the issue of whether the district court's order granting insurer's cross-motion for summary judgment was a final, appealable order. We conclude that the order is final and appealable because the ruling disposed of all of plaintiff's claims and ended the action, leaving nothing further for the district court to do to completely determine the rights of the parties. *See Harding Glass Co. v. Jones,* 640 P.2d 1123, 1125 n. 2 (Colo.1982).

## II.   Standard of Review

We review de novo an order granting summary judgment. *West Elk Ranch, L.L.C. v. United States* 65 P.3d 479, 481 (Colo.2002). "Summary judgment is appropriate when the pleadings and supporting documentation demonstrate that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law." *Id.*

Statutory interpretation involves only questions of law, which we also review de novo. *Smith v. Executive Custom Homes, Inc.,* 230 P.3d 1186, 1189 (Colo.2010). "When interpreting a statute, we strive to give effect to the legislative purposes by adopting an interpretation that best effectuates those purposes." *Id.* To do so, we interpret statutory terms in accordance with their plain and ordinary meanings. *Thurman v. Tafoya,* 895 P.2d 1050, 1055 (Colo.1995). "In addition, a statute should be read and considered as a whole in order to give consistent, harmonious, and sensible effect to all of its parts." *Id.* "If the statute is ambiguous, courts may consider prior enactments of the statute as well as the statute's legislative history as indicative of legislative intent." *Id.*

## III.   Issue on Appeal

Both parties agree that under the provisions of section 10–4–609 effective before the 2008 amendments, plaintiff would not be entitled to recover under her UM/UIM coverage with insurer because either the other driver

was not "underinsured" according to the statutory definition then in effect or plaintiff received the maximum amount of underinsured coverage for which insurer was liable. In addition, the parties agree that the statute, as amended, applies only to policies "issued or renewed" after January 1, 2008.

Moreover, the parties do not dispute the material facts relating to their interaction after January 1, 2008. On January 14, 2008, at plaintiff's request, the Suzuki Sidekick was added to plaintiff's policy. On or about that date, insurer issued plaintiff a "Declarations Page" stating, "Your policy information has changed," and listing the change as "The 1995 Suzuki Sidekick ... has been added." The Declarations Page also stated the premium increase of $83, outlined the liability coverage applicable to each vehicle, and described the UM/UIM coverage as "$25,000 each person/$50,000 each accident." Although the record does not include the entire policy that was then in effect, the Declarations Page does not indicate that the UM/UIM coverage was changed in any manner. The Declarations Page stated that the coverage began on October 27, 2007 and expired on April 27, 2008, the same six-month period for which plaintiff was already insured. Although insurer asserts that plaintiff did not pay any part of the $83 until after the accident, when the premium was paid is not material to our analysis.

On appeal, plaintiff argues that the district court erred by concluding that these facts do not constitute the issuance of a policy so as to make the amended statute applicable to her claim. We disagree and affirm the grant of summary judgment.

## IV. Analysis

■ The issue before us is whether the undisputed facts indicate that a policy was "issued" after January 1, 2008.[2] The bill revising section 10–4–609 did not define the term "policies issued." We conclude that these facts do not support a determination that insurer issued a policy within the meaning of the statute in January 2008.

"Policy" is elsewhere defined, in relevant part, as

an automobile insurance policy providing coverage for all or any of the following coverages ... delivered or issued for delivery in this state, insuring a single individual ... as named insured, and under which the insured vehicles therein designated are of the following types only: ... [a] motor vehicle of the private passenger or station wagon type.

§ 10–4–601(10)(a), C.R.S.2009. Applying the plain meaning of this definition, we conclude the "policy" was issued to plaintiff in October 2007, as no new type of coverage akin to those listed in the definition was added in January 2008, nor was a different type of vehicle added.

■ What occurred in January 2008 was not the issuance of a policy, but rather an amendment or change to the terms of the existing policy. Although the change included adding liability coverage for an additional vehicle, the UM/UIM coverage did not change. *See Soufi v. Haygood,* 282 Ga.App. 593, 639 S.E.2d 395, 398 (2006). Indeed, as a matter of law, once plaintiff had procured UM/UIM coverage, the number of vehicles on the policy was immaterial to that coverage because under Colorado law the coverage applies to the individuals insured, not to vehicles. *See DeHerrera v. Sentry Ins. Co.,* 30 P.3d 167, 172 (Colo.2001); *Wagner v. Travelers Prop. Cas. Co.,* 209 P.3d 1119, 1121 (Colo. App.2008) ("*DeHerrera* held that [UM/UIM] coverages insure and, therefore, follow the insured and not the vehicle....").

Our conclusion that a policy was not "issued" to plaintiff in January 2008 is essentially dictated by the supreme court's decision in *Allstate Insurance Co. v. Parfrey,* 830 P.2d 905 (Colo.1992) (*Parfrey*). There, the court

---

2. Plaintiff does not contend on appeal that insurer's actions in January 2008 constitute a renewal of her policy at the end of a policy period, and we see no facts that would support a conclusion that her policy was renewed in January 2008. "Renewal" is elsewhere defined to mean "the issuance and delivery by an insurer of a policy replacing at the end of a policy period a policy previously issued and delivered by the same insurer, or the issuance and delivery of a certificate or notice extending the term of the policy beyond its policy period or term." § 10–4–601(11), C.R.S.2009.

considered nearly identical language in former section 10–4–609(2), an adjacent part of the statute, which required an insurer to offer UM/UIM coverage in amounts higher than the statutory minimums "prior to the time the policy is issued or renewed." *Cf.* § 10–4–609(2), C.R.S.2009.

A division of this court had held that an increase in coverage and the addition of a new vehicle to a policy constituted "material alterations to the policy, requiring the insurer to extend a new offer of UM/UIM coverage." *Parfrey v. Allstate Ins. Co.*, 815 P.2d 959, 964 (Colo.App.1991). The supreme court disagreed, concluding that a policy was not "issued or renewed" when the insureds added a vehicle to their policy and raised the liability limits.

The court held that the statutory language imposed upon the insurer a "one-time duty" to offer UM/UIM coverage when the policy was issued. *Parfrey*, 830 P.2d at 913. In determining when a policy was issued for purposes of triggering the requirement to offer higher UM/UIM coverage, the court rejected "the conclusion of the court of appeals that an insurer must adhere to the mandatory offer requirements every time an insured makes a material change to an existing policy." *Id.* The court stated that there was nothing in the statutory text indicating that the legislature intended to incorporate a "material change" standard into the statute, and had it so intended it would not have used the language "prior to the time a policy is issued or renewed." *Id.*

Although *Parfrey* does not address the same statutory provision at issue here, it applies similar statutory language found in another subsection of the same statute. Just as *Parfrey* concludes the addition of a vehicle does not constitute a circumstance where a policy is "issued," so too we conclude that the addition of a vehicle does not constitute a circumstance where a policy is "issued," for purposes of the amendments to section 10–4–609, even if the addition of a vehicle were considered a material change to a policy.

Plaintiff argues that this interpretation of Senate Bill 07–256 is contrary to the public policy calling for broad UM/UIM coverage. Plaintiff correctly postulates that the purpose of the 2008 statutory amendment was to broaden UM/UIM coverage by eliminating the narrower definition of an underinsured vehicle and the maximum liability limitation—both of which denied an insured UM/UIM coverage unless the insured purchased such coverage in amounts above those of an underinsured tortfeasor—and removing language from subsection 10–4–609(2), which had permitted insurers to include anti-stacking language in their policies.

However, in broadening UM/UIM coverage, the legislature made the changes effective only as to policies issued or renewed after January 1, 2008, the effective date of the statute. By including such an effective date, the statute avoids interfering with existing contracts of insurance, as required under article II, section 11 of the Colorado Constitution. And by making the changes prospective to a date several months after the passage of the legislation, insurers had the opportunity to adjust premiums based on the mandated expanded coverage when new policies were issued or existing policies were renewed.

It would be illogical to interpret the revised statute as applicable whenever any amendment or change is made to existing coverage—even changes not related to UM/UIM coverage, such as the addition of a vehicle. Because UM/UIM coverage attaches to the individual and not the vehicle, adding a vehicle, as plaintiff did, had no impact on her UM/UIM coverage. *Soufi*, 639 S.E.2d at 399. Assuming, without deciding, the purpose of the legislation is to broaden UM/UIM coverage, we conclude such purpose is served when a policy is changed in a manner that affects such coverage.

Plaintiff also argues that since the Suzuki was added to her policy after January 1, 2008, the UM/UIM limits do not apply to this "new vehicle." However, this argument implies that the statutory changes do not apply to the other vehicle she had already insured, the Chevrolet pickup. Thus, under plaintiff's interpretation, the policy would provide different UM/UIM coverage amounts for the two vehicles. This result is an illogical interpretation of the statute and would produce a

result contrary to the law as applied in *DeHerrera.*

Plaintiff cites cases from other jurisdictions which have concluded that adding a vehicle to an existing policy is tantamount to the issuance of a new policy. *See, e.g., Fireman's Fund Ins. Co. v. Pohlman,* 485 So.2d 418, 420 (Fla.1986) (statutory amendments must be incorporated into policy because endorsement of additional vehicle constituted a "separate and severable contract"); *Gulf Am. Fire & Cas. Co. v. McNeal,* 115 Ga.App. 286, 154 S.E.2d 411, 416 (1967) ("While the issuance of an endorsement may not in every case constitute the issuance of a policy, nevertheless in this case the 'endorsement,' together with the original policy, effected insurance as to car No. 3. Thus under the Code definition of 'policy,' issuance of the endorsement here constituted issuance of a policy."); *Perkins v. Guaranty Nat'l Ins. Co.,* 667 So.2d 559, 563 (La.Ct.App.1995) ("[T]he addition of a vehicle to a commercial insurance policy, without changes in bodily insurance limits, is tantamount to issuing a new policy.").

By contrast, the insurer has cited cases from other jurisdictions which reach the opposite result, concluding that the addition of a vehicle to an existing policy does not result in a new policy being issued. *See, e.g., Sentry Ins. A Mut. Co. v. McGowan,* 425 So.2d 98, 99 (Fla.Dist.Ct.App.1982) (discussing whether the addition of vehicles to a policy constituted a "new" policy or a "renewal" policy and concluding that "merely replacing the insured vehicle with another vehicle, where the liability limits in the amount of the premium do not change, does not constitute a material variation in the policy requiring a new rejection of uninsured motorist coverage to be made"); *Vigil v. Rio Grande Ins. of Santa Fe,* 124 N.M. 324, 950 P.2d 297, 302–03 (N.M.Ct.App.1997) ("Based on the automatic coverage provision in the policy and our statutory definition of 'policy,' we hold that when Plaintiffs added or replaced vehicles under the policy, no new contract was created, but the change merely amounted to a continuation of the original policy."); *Pierce v. Allstate Ins. Co.,* 316 Or. 31, 848 P.2d 1197, 1199 (1993) ("[T]he addition of a vehicle to a policy, the deletion of a described vehicle, or the replacement of one vehicle by another under the same policy does not constitute issuance of a policy in the context of uninsured and underinsured motorist coverage."); *Torgerson v. State Farm Mut. Auto. Ins. Co.,* 91 Wash.App. 952, 957 P.2d 1283, 1286–87 (1998) ("We look to whether 'the changes made to the policy [are] sufficiently material to support a conclusion that a new, as opposed to a renewal, policy was issued.' ... [T]he addition of a new car to an existing policy is no more than a renewal of, or an action supplementary to, the original policy." (quoting *Koop v. Safeway Stores, Inc.,* 66 Wash.App. 149, 831 P.2d 777, 780 (1992))).

Notwithstanding the results in these cases, we conclude that *Parfrey* determines when a policy is issued under the Colorado statute, and therefore we decline to adopt the reasoning of courts from other jurisdictions.

We conclude that the district court correctly found that under the circumstances here the statutory amendments which became effective January 1, 2008 and applied only to "policies issued or renewed" on or after that date, were not incorporated into plaintiff's policy by the addition of coverage for another vehicle. Because there was no other genuine dispute of material facts, the court properly entered summary judgment for the insurer.

The summary judgment is affirmed.

Judge TAUBMAN and Judge J. JONES concur.