COLORADO COURT OF APPEALS                                    **2016COA132**

Court of Appeals No. 15CA1652
City and County of Denver District Court No. 14CV34003
Honorable John W. Madden IV, Judge

Sierra Pacific Industries, Inc., a California corporation,

Plaintiff-Appellant,

v.

Jason Bradbury, d/b/a Bradbury Construction, Inc., a Colorado corporation,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE DAILEY
Taubman and Freyre, JJ., concur

Announced September 8, 2016

Perkins Coie, LLP, L. Norton Cutler, Daniel Graham, Denver, Colorado; Lehr,
Lemmon, Kirwin & Francis, LLP, Mark Kirwin, Ventura, California, for Plaintiff-
Appellant

The Hustead Law Firm, P.C., Patrick Q. Hustead, Ryan A. Williams, Denver,
Colorado, for Defendant-Appellee

¶ 1     In this construction defect dispute, plaintiff, Sierra Pacific Industries, Inc. (Sierra Pacific), appeals the district court's entry of summary judgment in favor of defendant, Jason Bradbury, d/b/a Bradbury Construction, Inc. (Bradbury).  We affirm.

## I.     Background

¶ 2     Sierra Pacific was hired by a contractor, the Weitz Company I, Inc. (Weitz), to supply windows and doors for the construction of condominiums for the Ajax Lofts Condominium Association, Inc. (Ajax).  Sierra Pacific, in turn, hired Bradbury to install the windows and doors; Bradbury began and completed its work in 2002.

¶ 3     On June 11, 2004, the City and County of Denver issued a certificate of occupancy for all units.  Subsequently, however, the condominiums' residents began complaining to Ajax about water infiltration.  At Ajax's direction, Weitz and Sierra Pacific attended to the reported leaks and water damage between 2004 and 2011, including two substantial retrofit repairs in January 2005 and March 2011; Bradbury participated in some repair efforts in 2004, but none thereafter.

¶ 4     In November 2011, Ajax filed suit against Weitz for the alleged defective construction.  Weitz, in turn, filed suit against Sierra

Pacific for damages, costs, and expenses related to Ajax's claims. Following the district court's consolidation of the two cases (hereinafter, the underlying case), Ajax, Weitz, and Sierra Pacific reached a settlement on July 31, 2014.

¶ 5     On October 20, 2014, Sierra Pacific filed the present indemnification action against Bradbury to recover losses incurred in the settlement and damages for related contractual breaches. Bradbury filed a motion for summary judgment under C.R.C.P. 56(b), asserting that Sierra Pacific's claims, brought nearly ten years after Bradbury ceased repair efforts on the project, were time barred by the six-year statute of repose in Colorado's Construction Defect Action Reform Act (CDARA), § 13-80-104, C.R.S. 2015.

¶ 6     Sierra Pacific responded that its claims were not barred by the statute of repose because (1) under section 13-80-104(1)(b)(II), its claims against Bradbury did not "arise" until after the underlying case was settled in 2014, after which Sierra Pacific had ninety days to file its complaint (which it did); and (2) even if the statute of repose was not tolled by the settlement, the period of repose did not commence until 2011, when the improvements to the property in

connection with Bradbury's defective work were substantially completed.

¶ 7     Bradbury replied that (1) there is no settlement exception to the statute of repose; and (2) the statute of repose commenced, at the latest, upon its completion of work in 2004.

¶ 8     The district court concluded that

- both the 2005 and 2011 repairs constituted "improvement[s] to the real property," § 13-80-104(1);

- "[s]ince Bradbury conducted repairs in 2004, [it] may have contributed to the 2005 retrofit," but the 2011 retrofit constituted a "separate effort";

- "[t]herefore, the effective date of substantial completion in regard[] to Bradbury's work is January 2005";

- to toll the statute of repose that commenced in January 2005, Sierra Pacific would have had to notify Bradbury of its claims within the requisite six-year period;

- "[i]t is undisputed that Bradbury did not have notice of [Sierra Pacific's] claims within the requisite time period"; and

3

- consequently, Sierra Pacific's claims against Bradbury are barred by the six-year statute of repose.

¶ 9    Accordingly, the district court granted Bradbury's motion for summary judgment.

## II.    *Analysis*

¶ 10    Sierra Pacific contends that the district court erred in finding that its claims were barred by the six-year statute of repose.  We disagree.

¶ 11    We review de novo a district court's order granting summary judgment.  *Mountain States Adjustment v. Cooke*, 2016 COA 80, ¶ 11.  Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *Geiger v. Am. Standard Ins. Co. of Wis.*, 192 P.3d 480, 482 (Colo. App. 2008).

¶ 12    A district court's ruling may be affirmed based on any grounds that are supported by the record.  *Rush Creek Sols., Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402, 406 (Colo. App. 2004).

### A. The Statute of Repose Was Not Tolled
### Until the Settlement in the Underlying Case

¶ 13   A statute of limitations creates a time limit for a plaintiff to file suit in a civil case and is based on when a claim accrued; in contrast, a statute of repose bars any suit filed after a specific time, thereby acting as a "'cutoff' or absolute bar on a defendant's liability, and it reflects a legislative judgment that a defendant should be free from liability after the legislatively prescribed period of time." *Lewis v. Taylor*, 2016 CO 48, ¶ 43 (Gabriel, J., dissenting) (citing *CTS Corp. v. Waldburger*, 573 U.S. ___, ___, 134 S. Ct. 2175, 2183 (2014)); *see also Gleason v. Becker-Johnson Assocs., Inc.*, 916 P.2d 662, 664 (Colo. App. 1996) ("Unlike a statute of limitations, a statute of repose imposes an absolute bar to bringing suit after a set period of time, regardless of whether the claim has accrued or an injury has resulted. Thus, even though a statute of limitations may not bar an action, a statute of repose operates independently.") (citation omitted).[1]

---

[1] "The chief difference between a statute of repose and a statute of limitation is that [the statute of repose] is not subject to any 'discovery' rule, but instead terminates any party's right to bring an action at a date certain. . . . It is thus possible in a given action that the statute of repose will bar a claim even before it accrues."

¶ 14 "Section 13-80-104 . . . contains both a statute of limitations and a statute of repose that are applicable to suits against architects, contractors, builders or builder vendors, engineers, inspectors, and others involved in real property construction or improvements." *Thermo Dev., Inc. v. Cent. Masonry Corp.*, 195 P.3d 1166, 1167 (Colo. App. 2008). Section 13-80-104(1)(a) incorporates the two-year statute of limitations contained in section 13-80-102(1), C.R.S. 2015; and, subsections (1)(a) and (2) of section 13-80-104 provide a statute of repose which expires six years "after the substantial completion of the improvement to the real property," unless it is extended two years because the underlying cause of action arose "during the fifth or sixth year after substantial completion of the improvement to real property."[2]

¶ 15 Sierra Pacific asserts that, under section 13-80-104(1)(b), it was allowed to file claims against Bradbury within ninety days of

---

Stephen A. Hess, 5A Colo. Prac., Handbook on Civil Litigation
§ 1:13 (2015 ed.).

[2] The text of section 13-80-104(1)(a) and (2), C.R.S. 2015, is set forth in Appendix A to this opinion.

settling the underlying case, notwithstanding the statute of repose.[3]

But in *Thermo*, a division of this court rejected an identical argument; the division held that section 13-80-104(1)(b)'s settlement tolling provision applied only to the statute of limitations and not to the statute of repose. 195 P.3d at 1170.

¶ 16      Sierra Pacific posits that the *Thermo* division erroneously based its decision on "incomplete readings" of the statute and its legislative history. A review of the *Thermo* decision, however, discloses that it was based on an extensive analysis of the pertinent statutory language, legislative history, and policies underlying CDARA. We perceive no reason to depart from the division's holding in *Thermo*.[4]

_____

[3] The text of section 13-80-104(1)(b) is also set forth in Appendix A.

[4] Sierra Pacific posits that, although all of the speakers at the legislative hearings for section 13-80-104(1)(b) referenced only the statute of limitations, they must have meant, instead, both the statute of limitations *and* the statute of repose. Sierra Pacific premises its assertion on one speaker's mistaken statement that the statute of limitations was six years, when, in reality, it was two years and a six-year period applied to the statute of *repose*. In our view, this isolated numerical mistake does not taint the effect of either his testimony or the testimony of the others that followed him — that is, that section 13-80-104(1)(b)'s tolling clause applied only to the statute of limitations. Hearings on H.B. 01-1166 before the House Business and Labor Comm., 63d Gen. Assemb., 1st Reg.

¶ 17    Consequently, we conclude that the settlement in the underlying case did not impact the application of the statute of repose with respect to Bradbury.

### B. There Was No Genuine Issue of Material Fact Regarding the Expiration of the Statute of Repose

¶ 18    We next consider and reject Sierra Pacific's contention that summary judgment was inappropriate because there remains a genuine dispute of material fact as to when the statute of repose expired.  Because of the manner in which we interpret the statute of repose provision and apply the "repair doctrine" to uncontested facts, we are able to determine, as a matter of law, when the statute of repose commenced and expired.  *See, e.g., Woodmoor Improvement Ass'n v. Prop. Tax Adm'r*, 895 P.2d 1087, 1090 (Colo. App. 1994) ("Analysis of a statute of repose does not reach the issue of accrual of any cause of action.  Unlike a statute of limitations that begins running upon accrual of the claim, a period contained in a statute of repose begins when a specific event occurs,

---

Sess. (Mar. 6, 2001); House floor Debate on H.B. 01-1166 before the House Business and Labor Comm., 63d Gen. Assemb., 1st Reg. Sess. (Mar. 12, 2001); Hearings on H.B. 1166 before the Senate Business Affairs and Labor Comm., 63d Gen. Assemb., 1st Reg. Sess. (Mar. 21, 2001).

regardless of whether a cause of action has accrued or whether any injury has resulted.").

¶ 19    Section 13-80-104(1)(a) states, as relevant here, that "in no case shall such an action be brought more than six years after the substantial completion of the improvement to the real property." The statute of repose commences in this context, then, upon "substantial completion of the improvement to the real property."

¶ 20    The parties agree that, for purposes of applying the statute of repose, "an improvement may be [to] a discrete component of an entire project." *Shaw Constr., LLC v. United Builder Servs., Inc.*, 2012 COA 24, ¶ 38.  They disagree, however, about when "substantial completion of the improvement" occurred here.  Sierra Pacific contends that it did not occur before 2011 because, as of that time, repairs "related to and connected with" Bradbury's "improper installation work and flawed repair work" were still being made.  In contrast, Bradbury contends that it could have occurred in 2002, when Bradbury initially finished its work, but in any event

no later than 2004, when it last made repairs.  For the following reasons, we agree with Bradbury.[5]

¶ 21    Our prior decisions have recognized that, depending upon the circumstances, "substantial completion" of a project can occur by the time mechanics' liens could be filed "after the completion of the building, structure, or other improvement," *May Dep't Stores Co. v. Univ. Hills, Inc.*, 789 P.2d 434, 439 (Colo. App. 1989) (citation omitted), or, in the case of subcontractors working on the last building in a condominium complex, when a certificate of occupancy was issued, *Shaw*, ¶¶ 47-50.

¶ 22    But as the division in *Shaw* pointed out,

> CDARA does not define "substantial completion."  In 1986, an amendment removed the prior definition, "the degree of completion of an improvement to real property at which the owner can conveniently utilize the improvement for the purpose it was intended." § 13-80-127, C.R.S. 1973; Ch. 114, sec. 1, § 13-80-104, 1986 Colo. Sess. Laws 697 (repealing former § 13-80-127).  The legislative history does not explain the reason for this deletion.

*Id.* at ¶ 15.

---

[5] In doing so, we necessarily reject the district court's conclusion that the statute of repose commenced in 2005.

¶ 23    Determining how the phrase "substantial completion" should

be applied involves a question of statutory interpretation, which we

review de novo.  *See Trappers Lake Lodge & Resort, LLC v. Colo.*

*Dep't of Revenue*, 179 P.3d 198, 199 (Colo. App. 2007).

¶ 24    When construing a statute, a court must not only ascertain

and give effect to the intent of the General Assembly but also refrain

from rendering a judgment that is inconsistent with that intent.  *Id.*

To determine legislative intent, we look first to the language of the

statute.  *Id.*  If the statute's words are clear and unambiguous in

import, we apply them as written.  *Id.*  If, however, the words are

ambiguous or unclear, such that they "do not inexorably lead to a

single result," we may consider, among other things, the object

sought to be attained and the consequences of a particular

construction.  *Id.* at 199-200 (quoting *State v. Nieto*, 993 P.2d 493,

501 (Colo. 2000)).  Ultimately, we must construe a statute to further

the legislative intent represented by the entire statutory scheme.

*Id.* at 200.

¶ 25    The words of section 13-80-104(1)(a) do not provide a clear

answer to the issue presented here; consequently, we must turn

elsewhere, such as to the object of the statute and the

11

consequences of alternative constructions, to discern legislative intent.

¶ 26    The purpose of section 13-80-104(1)(a) is to relieve those involved in the construction business of the prospect of potentially indefinite liability for their acts or omissions. *See generally* Edward H. Tricker, Erin L. Ebeler & Christopher R. Kortum, *Applicability of Statutes of Repose to Indemnity and Contribution Claims and 50 State Survey*, 7 J. Am. C. Construction Law. 5 (Jan. 2013) ("[T]he purpose of a construction statute of repose is to prevent potentially limitless and perpetual liability.  The nature of construction and construction claims makes statutes of repose especially appropriate in the context of construction."); *see also Gleason*, 916 P.2d at 664 ("[T]he limitation of actions under § 13-80-104(1)(a) is in derogation of the common law because, prior to the enactment of statutes of limitations relating to construction, builders and contractors were subject to potentially indefinite liability."); *Monson v. Paramount Homes, Inc.*, 515 S.E.2d 445, 449 (N.C. Ct. App. 1999) (noting that the purpose of a statute of repose, in a construction defect statute, is to prevent defendants from being subjected to "potential open-ended liability for an indefinite period of time"); *Barnes v. J.W.*

12

*Bateson Co.*, 755 S.W.2d 518, 521 (Tex. App. 1988) (acknowledging that the statute of repose protects construction professionals within its purview from indefinite potential liability).

¶ 27    In *Gordon v. Western Steel Co.*, 950 S.W.2d 743 (Tex. App. 1997), the Texas Court of Appeals construed a provision substantially similar, in relevant part, to section 13-80-104.[6]  The court concluded that statute's purpose was best served by commencing the period of repose when a party completed its own work with respect to a project:

> [W]here different subcontractors were responsible for the construction of different parts of a larger project, the statute of repose should be applied to each of those individual subcontractors when they have completed their respective improvements. . . .
>
> In most scenarios, the various improvements contained within a larger project will not stretch beyond several years, and the general contractors or beneficiaries ordinarily have opportunities to supervise or disapprove of the

---

[6] *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.009(a) (West 2015) ("A claimant must bring suit for damages for a claim listed in Subsection (b) against a person who constructs or repairs an improvement to real property not later than 10 years after the substantial completion of the improvement in an action arising out of a defective or unsafe condition of the real property or a deficiency in the construction or repair of the improvement.").

work along the way. Secondly, it is not overly burdensome to decipher when respective contractors substantially complete their improvements (*e.g.* when they submit their final bills and/or walk away from the project). . . . The legislature has . . . announced that persons in the construction business should not be liable for an improvement more than ten years after they have completed their contracted-for work and walked away. An alternate construction would undermine the purpose of the statute. Besides the "potentially limitless liability" a subcontractor might face in such a scenario, the supreme court has noted other difficulties created by allowing suit beyond ten years of substantial completion. *See Trinity River Auth. v. URS Consultants, Inc.*, 889 S.W.2d 259, 264 (Tex. 1994) (noting evidentiary difficulty of defending suit years after completion of an improvement because of faded memories, as well as increased possibilities of third-party neglect, abuse, poor maintenance, mishandling, improper modification, and/or unskilled repair).

. . . Starting the statute of repose when each subcontractor finishes its improvement conforms with the legislative intent of preventing indefinite liability for those who construct or repair improvements to real property.

*Id.* at 748-49.

¶ 28     Persuaded by this rationale, we conclude that a subcontractor

has substantially completed its role in the improvement at issue

when it finishes working on the improvement. In this case, there is no factual dispute as to when that occurred: Bradbury finished its work on the windows and doors initially in 2002, and ultimately in 2004. Thus, the statute of repose commenced, at the latest, in 2004.

¶ 29     Sierra Pacific asserts that the statute of repose was tolled, however, while others worked to repair Bradbury's "improper installation work and flawed repair work."

¶ 30     In *Smith v. Executive Custom Homes, Inc.*, 230 P.3d 1186 (Colo. 2010), the supreme court held that "equitable tolling under the repair doctrine would be inconsistent with the CDARA" "because the General Assembly has already taken into account the need for extra time to complete repairs by allowing for statutory tolling while such repairs are made pursuant to the notice of claim procedure." *Id.* at 1192. "The [statutory] repair doctrine," the court said, "tolls a limitations period while a construction professional undertakes repair efforts intended to remedy the defect," and "[t]olling continues until the date that the construction professional abandons its repair efforts, provided that the homeowner reasonably relied on the promises to repair and, as a result, did not

15

institute a legal action against the construction professional." *Id.* at 1191.[7]

¶ 31    Sierra Pacific's attempt to toll the statute of repose based on its own efforts or promises, not Bradbury's, is unavailing under *Smith. Accord A & B Painting & Drywall, Inc. v. Superior Court*, 30 Cal. Rptr. 2d 418, 420 (Cal. Ct. App. 1994) ("Repair by third parties does not involve reliance upon the defendant in any way and furnishes no basis for tolling."); *cf. Ocean Winds Corp. of Johns Island v. Lane*, 556 S.E.2d 377, 380 (S.C. 2001) ("The legislature could not have intended that the date upon which a subcontractor . . . becomes free from liability with regard to a particular job hinges upon the diligence of the general contractor and/or developer in completing construction. To so hold would subject the subcontractor to 'the economic and emotional burdens of litigation and liability for an indefinite period of time.'") (citation omitted).

¶ 32    Again, there is no material issue of fact as to when Bradbury substantially completed its work on the improvement: that occurred

---

[7] In *Smith*, the supreme court said that the statutory "repair" doctrine applies to the statutes of limitations *and* repose located in section 13-80-104. *Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1192 (Colo. 2010).

in 2002.  Nor is there any issue of material fact as to the length of time the statute of repose could have been tolled, as to Bradbury, pursuant to the repair doctrine: that was until 2004.  Even commencing anew the six-year period of repose in 2004, that period would have expired long before Bradbury received notice of Sierra Pacific's claims in 2014.

¶ 33    Because, under the applicable statute of repose, Sierra Pacific's claims against Bradbury are time barred, the district court properly granted Bradbury's motion for summary judgment.

*III.    Conclusion*

¶ 34    The judgment is affirmed.

¶ 35    JUDGE TAUBMAN and JUDGE FREYRE concur.

17

APPENDIX A

Section 13-80-104, C.R.S. 2015, provides:

(1)(a) Notwithstanding any statutory provision to the contrary, all actions against any architect, contractor, builder or builder vendor, engineer, or inspector performing or furnishing the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property shall be brought within the time provided in section 13-80-102 after the claim for relief arises, and not thereafter, but in no case shall such an action be brought more than six years after the substantial completion of the improvement to the real property, except as provided in subsection (2) of this section.

(b)(I) Except as otherwise provided in subparagraph (II) of this paragraph (b), a claim for relief arises under this section at the time the claimant or the claimant's predecessor in interest discovers or in the exercise of reasonable diligence should have discovered the physical manifestations of a defect in the improvement which ultimately causes the injury.

(II) Notwithstanding the provisions of paragraph (a) of this subsection (1), all claims, including, but not limited to indemnity or contribution, by a claimant against a person who is or may be liable to the claimant for all or part of the claimant's liability to a third person:

(A) Arise at the time the third person's claim against the claimant is settled or at the time

final judgment is entered on the third person's claim against the claimant, whichever comes first; and

(B) Shall be brought within ninety days after the claims arise, and not thereafter.

. . . .

(2) In case any such cause of action arises during the fifth or sixth year after substantial completion of the improvement to real property, said action shall be brought within two years after the date upon which said cause of action arises.